Case 25-1940, Patrice Nelson et al. v. MillerKnoll Inc. et al. Argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. Good morning, Your Honors. May it please the Court, Gaetan Gervilleros on behalf of Patrice and Miko Nelson as personal representatives for the estate of Jacqueline Nelson. I intend to reserve four minutes of time for rebuttal. All right. The District Court's decision should be reversed because it cannot be squared with the 2015 addendum. With the 2015 what? Addendum.  Section 1B of the addendum says that it is not effective until HMI acquires the IP rights necessary for HMI to manufacture and sell the Exhibit B products. How can this contract be the vehicle for assigning HMI IP rights when it says it's not effective until HMI acquires the IP rights? That's a paradox that cannot exist. And the District Court was wrong in concluding that this was a vehicle for that assignment because that was the major premise for everything the District Court did, its conclusion that this contract assigned the IP to HMI. At the time, Jacqueline had no IP. She had assigned it to GNF. HMI knew that because HMI is the one that created GNF and asked Jacqueline to assign her rights to GNF. And there's a pivotal email that puts all of this in context and the understanding of this addendum from June 25, 2015, that I want to focus the Court's attention on. It's page ID 3912, and it's Exhibit 74 of the opposition brief. This is an email from Bob Giordano, who was counsel for the Nelsons, to Tim Lopez, who was a senior VP at HMI, who orchestrated the addendum signing and the settlement and was one of the key players there at HMI. And the addendum had been sent. If you go back to the emails before this, their communications had been about a license. We're going to have a license. And so a license was sent, a proposed license was sent to Tim. And in an earlier email, he says, I'm going to simplify this license and we're going to put the products into the existing license that we have under the 2006 royalty agreement. So Giordano gets the addendum and he says to Tim, shouldn't the foundation be the signatory, since the rights were legally transferred to them? He's asking Tim, what is the purpose of this agreement? Because if this is a license, then we're not supposed to be signing a license. We're the ones with the royalty rights, but we don't have the license. GNF is the one that would assign the license, right? Bob says, actually, no. In other words, no, GNF should not be the signatory. There is the IP right and there's the income right. The foundation owns the IP rights in certain instances and the Nelsons own the right to the income from the IP. Just to make sure I'm following you, in 2006, Jacqueline and HMI entered into a, I guess, what could be described as a royalty agreement, such that Jacqueline and her heirs would be paid royalties and HMI would get some usage ownership rights. Subsequently, in 2015, Jacqueline's son, on behalf of, I guess, Jacqueline and the estate, and HMI entering into a new agreement for the estate, or I guess Miko, the son, to get royalties at that time. So there are actually multiple agreements as to how and to what extent Jacqueline would receive royalties. Is that correct so far? There's only one agreement. This royalty agreement is the culminating royalty agreement with Jacqueline Nelson at that time. Which agreement are you talking about? The 2006 royalty agreement is the culminating royalty agreement. This agreement says there were other agreements, and this agreement presupposes prior assignments. This is not an assignment contract. You can find an example of an assignment contract in the IPAA that she was influenced to sign in 2013. That's what an assignment looks like. This is a royalty agreement, and it does document that there were prior assignments and what those products were. In Section 3, it talks about what products HMI owns. Okay, but the bubble lamp was not included in the 2006 agreement, correct? That's right. All the parties knew that it was not there. That's why the bubble lamp is one of the subjects of the IPAA in 2013. Jacqueline was given a contract through HMI that says that she's assigning the bubble lamp IP to GNF. It specifically calls out the bubble lamps. But in 2015, or prior to and leading up to 2015, Miko's son or the estate had been receiving royalties prior to and up to 2015. Now, did those royalty payments include for the bubble lamp? Well, up until 2015, HMI was not manufacturing and selling the bubble lamp. Okay, but then there was this 2013 lawsuit where the foundation sued Modernico for fraudulent procurement, I guess. And that case was settled, which that settlement included a disposition as to what would happen with regard to the bubble lamp, as I remember. It did as between HMI and Modernico. Well, HMI at that time purchased the rights to the bubble lamp from Modernico. Is that right? And that's 2013? The most that can be said is they purchased whatever rights Modernico had. There were two parties claiming rights to the bubble lamp at that time. One was Modernico, and the other one was GNF. And HMI was supporting GNF and funding the litigation by GNF against Modernico for infringement of the bubble lamp IP. Then in settlement, HMI says, you know, we're going to purchase the lamp business, which includes everything that goes along with that. One of the main things was an exclusive supplier agreement. And that's in fact referenced in some of these emails. There's an exclusive supplier agreement with a manufacturer that has the devices that are used to make these lamps, and Modernico has that agreement. And so one of the things that HMI is purchasing is this exclusive supplier agreement. So you agree HMI gets everything that Modernico had at this point? All the rights, whatever Modernico had. But there's no agreement with GNF. There's nothing in this record that shows that they purchased GNF's rights. Because that's covered by the 2015 addendum. When I say covered by, I mean addressed by. I'm not disputing right now what's in it, but their position would be that everything else they need to get everything they want comes from the 2015 addendum. That is their position, but it can't be right. It can't be right because the addendum's not effective until they get the rights. And the language there is significant. I don't quite understand when you're saying it's not. I don't see anything wrong with writing a contract that says we get something that goes into effect that's different from we have a binding agreement if it goes into effect. Or are you saying that the whole addendum is invalid because it addresses something that hasn't happened yet? Well, that's one way to look at it. Well, is that the way you're looking at it? The way we're looking at it is after the addendum was signed, there was a discovery that, wait a minute, you never got a license from GNF for this, for the bubble lamps? Why is there no license? And then that's when we find out they're claiming that they have the rights, but all they did was purchase what Modernica was claiming. There were two parties claiming rights to this. And GNFs were never resolved with HMI. Just to be clear about one thing, prior to 2015, were the plaintiffs getting royalties on the bubble lamp? No, they were not. Okay. Because only Modernica was making them. Only Modernica was making them. And I have to concede that the understanding, of course. Yeah, but that was addressed in the 2013 lawsuit, right? Yes. HMI or GNF. So beginning in 2013, did the plaintiffs begin to get royalties on the bubble lamp? No, because they had no agreement with HMI for royalties on those lamp products. So did that start with the 2015 addendum? Correct. And then it went from 1.5% under the old agreement to 5% under the addendum. Correct. And what I'm saying is, if you look at Section 1B, what that tells us is this is just an agreement on royalties. That's all it is. That's why it's called a royalty agreement, first of all, in 2006. And in 2015, an addendum to a royalty agreement. All right? And they say, look, this isn't effective until HMI gets the IP rights. So this can't be the vehicle for the IP rights if it's not effective until HMI gets them. Now, where would HMI get them? Two possible places, Modernica and GNF. And is this addendum specific about where they're going to get it? No. Why not? I think that's the question that needs to be asked every time you look at the extrinsic evidence in the contracts. Why is there never at any point anything that ever says we are going to own the Bubble Lamp IP? Ever. And, in fact, you would have expected that in this email that Jordan Ellison's Lopez. I mean, if everything's above board about what's going on, why wouldn't he have said in that email, no, we're going to own the Bubble Lamp IP rights? No. He just says GNF owns the IP rights. He doesn't say anything about HMI owning any IP rights. It's only until later we find out now HMI is claiming they own the IP rights, and they never had an agreement with GNF for that. Now, we're the ones who are standing to make that argument, not GNF at this point, because the rights, all the rights that GNF had, whatever they are, came back to the estate when the 2013 IPA was rescinded. And I think that's a fundamental misunderstanding the court had when it issued this opinion. There's not really any analysis about that at all, and that's a very significant key issue. GNF was the one with the rights when this addendum was signed. They're not a signatory, and Lopez confirmed that in this email. So in order for you to prevail, your argument is that the agreements don't authoritatively dispose of the IT rights with respect to the Bubble Lamp. Correct. Is that kind of your argument? Correct. We don't have a burden to prove that there is an agreement. They have the burden to prove there is one, and I'm saying they're a reasonable jury to conclude there is not one. Contract certainly doesn't say it is. At some point, the plaintiffs began to get royalties from the Bubble Lamp. Right. So how do we square that with your argument that the agreements didn't say who had what rights to the Bubble Lamp? So it's just a royalty agreement, right? And they're manufacturing and selling the lamps. So naturally, they're going to be expecting royalties if HMI is manufacturing and selling the lamps when they have a royalty agreement about that. That doesn't ratify them taking or claiming that they are the sole owners of the IP. That's a whole different issue that they didn't need to know. We'll have you, Rubano. May it please the Court. My name is Mark Durbin, and I'm here with my partner, Megan Kribishe. We represent Herman Miller, Miller & Olnap. The district court got this right. This case is about the application of a basic principle of law. The Nelsons cannot authorize Herman Miller to take certain steps and then complain that they have violated rights. The Nelsons cannot ratify the conduct that Herman Miller took based on that authorization and then seek damages and bring claims based on that conduct. The district court addressed those two points as well as the third point I suspect we will not get to about the lack of injury to the Nelsons, and that was the basis for the opinion. What you just heard was an argument about a different issue entirely. The basis for the court's decision was that the unambiguous language of the contract and additional conduct. Oh, the contract is the 2015 addendum. To be correct, I refer to the 2006 royalty agreement as amended by the 2015 addendum. They do work together. So the district court concluded that that contract unambiguously authorized Herman Miller to own the Modernica Design registrations. In addition, I'm going to come back to that in a second to focus the issue. Including the bubble wrap. It did indeed. In fact, this is important, I think, the context of this case. This case began about whether or not Herman Miller was authorized to manufacture and sell bubble wraps. All the claims focused on that for years. All the damages were based on our sales. Today, however, the Nelsons have pivoted to the issue of whether, and this is the sole issue, whether or not Herman Miller was authorized to acquire the Modernica Design registrations. Those two design registrations relate to the trade dress for the bubble lamps. There's a third, which is a word mark that means bubble lamp, or that it is bubble lamp. Those three, I mean, the two design registrations are the ones that the plaintiff defines as the Modernica Design registrations in his complaint. But it also references the bubble lamps. So all this is about, it's no longer about whether we can manufacture and sell bubble lamps. Herman Miller. It's only about whether we were authorized to acquire the ownership of the Modernica Design registrations. That's what this case is about. And the district court said, I got a lot of evidence that shows that. In fact, the undisputed evidence shows that. And I want to start with where the Nelsons began. I'm not quite following you. I thought that was addressed in the 2013 lawsuit, the rights between Modernica and your client. So the 2013 lawsuit ultimately led to a global settlement that did, in fact, resolve those rights. So pursuant to the agreement that occurred as a result of that, in which Mr. Giordanella, on behalf of the Nelsons, was involved, what happened is Herman Miller acquired the design registrations for the bubble lamps. It also acquired all of the other rights for the lighting business that Modernica had. So whatever rights they had, we acquired. And we specifically acquired the Modernica Design registrations at issue. And the question is, did the... Well, you know, Jacqueline claimed she had never given the rights to Modernica for the bubble lamps. And then we have this 2013 lawsuit resolving who was entitled to the rights to the bubble lamps as between Modernica and your client. Did Jacqueline sign the settlement or judgment documents pertaining to the 2013 lawsuit? No. Miko signed the addendum that was part of that global settlement. Miko Nelson, on behalf of his mother, because Jacqueline... What global settlement are you referring to? The settlement that resolved which of these disputes? It's a complex collection. So there were two different lawsuits, one by Herman Miller against Modernica for Eames, a different designer, not Nelson, registrations or products. Then there was one by the foundation against Modernica for the bubble lamps and the Nelson name. There were two components to that. Because for over a decade, they'd been the only company selling bubble lamps in that they'd obtained registrations based on the 11 or 12 years that they had been the sole source of these products. They had also obtained registrations of the Nelson name. So that lawsuit involved the bubble lamps but also the Nelson name. And then to resolve that globally, the idea was that Herman Miller would buy out Modernica. We would spend our money, Herman Miller would spend millions of dollars to acquire the lamp business and all the rights that came with it, including these design registrations, which are at issue in this case and in this appeal, and the right to manufacture the bubble lamps. But Nelson's part of that global settlement was to agree that we could do that, to authorize us to acquire them, and that in exchange for that, we would pay them 5% royalties on those. You say the Nelson's part of it, that gets instantiated in the 2015 addendum. Yes. Yes. In fact, and ultimately, we think that's where this case should start and end, but there is additional evidence. In that agreement, as you just heard the Nelson's counsel point out, the addendum in 2015 was conditioned upon Herman Miller acquiring the intellectual property rights necessary to manufacture the bubble lamps. Because if we didn't have the rights, if Herman Miller didn't have the rights, Herman Miller could not make money for everyone, and we would be competing with others. So now, as I understand it, they want to say that in that addendum, you didn't get everything. They had some stuff left over that they now want to monetize or to exert ownership of. It sounded like that during the argument, but that's not what was briefed below or even in this court. The argument is that they never authorized us to acquire ownership of the Modernica design registrations, and that Meiko Nelson subjectively believed, though it is nowhere in the record, that all we were going to do was acquire a license to the Modernica design registrations. Therefore, from their point of view, the ownership rights remained in the Nelsons because Modernica never really got them? If I may do my best of what I think their argument is, their argument, there are multiple levels to the ownership issue, and there's no claim, this is important, pending before this court, that will resolve an issue of who owns those rights because that has never been raised. There's no D.J. claim. There's no claim for that. What is undisputed, however, is that we paid money to Modernica and they assigned the Modernica design registrations to us. That is undisputed. That's in fact what's at issue. The Nelsons say we shouldn't have done that. Did Jacqueline approve that assignment? Meiko approved that assignment. Meiko approved it. Jacqueline was acting with power of attorney. How did he do that, though? In resolving the 2013 lawsuit, or was this in reference to the 2015 where Meiko entered into this, at that time was a new agreement for him to get royalties off the bubble? The answer, Your Honor, is yes. It's both because the 2015 agreement was the end result of the resolution of the 2013 litigation. That was part of the resolution. But what matters for us is that he authorized us to acquire them. In fact, he made the agreement by which we would begin manufacturing and selling bubble lamps conditional on us acquiring that intellectual property as needed. Just to be clear, Meiko had the power of attorney from Jacqueline. There's no distinction between the two of them at this point. Yes, Your Honor. That's why Meiko signs. Correct. And I apologize. But Meiko is arguing that when he signed these things, he was signing a licensing agreement. So from his point of view, HMI still doesn't own all these rights, these intellectual property rights to the bubble lamp. Is that where we are? No. What they've argued below is that we were not authorized to own to acquire the bubble lamp IP and that we misled them that we were going to own it. They thought we were just going to license it. That is really the argument they're making. However, Your Honor, the answer to your question is still answered by the contracts. The 2015 addendum made the bubble lamps, the Nelson Brandon bubble lamps, products under the royalty agreement. And in that agreement, there are several sections that address who owns what explicitly. Section 12 of that agreement, it's at the record 220-2. Section 12 of that agreement is actually entitled product ownership. And that section says that all right, title, and ownership of the designs for the licensed products is owned by Herman Miller. It further says that Herman Miller is the only entity authorized to manufacture, sell, or license the rights to those designs. That's section 12. In section 10 of that agreement, entitled design origination, it represents, MECO represents by signing on to it, that no one else other than HMI has any title or ownership in those designs and design registrations. In section 11 of that agreement, entitled proprietary rights, it states that the only company authorized to enforce the proprietary rights and to pursue actions to enforce the proprietary rights related to the products is Herman Miller. And then finally, it says in consideration, section 6, in the computation of royalties, it says in consideration for the assignment to HMI of the designs, patent rights, etc., of these products, we will pay, Herman Miller will pay royalties. All of those provisions together, and there are actually additional references to own or ownership in the document besides those four key provisions, prove conclusively that the district court accurately and appropriately found that we, Herman Miller, were authorized to own those designs and the design registrations. It is called out specifically within the language of the agreement. The arguments that the plaintiff make that it meant something else are based entirely on MECO's subjective belief that it meant something else. But title cannot mean not title. Own cannot mean doesn't own. Exclusive right, title, and interest, and the right to enforce, does not mean we do not have those rights. Instead, MECO's only argument and the only evidence presented is that he simply believed that they did not transfer that ownership. So we get to the same place, Your Honor, whether we look at it from authorization or transfer of ownership, because at the end of the day, the contract is unambiguous. The district court found that. But the district court also found that the authorization for Herman Miller to acquire those rights was presented and confirmed by other evidence. MECO hired a lawyer named Mr. Giordanella. Mr. Giordanella dealt with Herman Miller and the Foundation's lawyers. Mr. Giordanella testified in the case, he sent many emails, and he explained in the documentary evidence, he explained to MECO that the nature of this deal, the settlement that would resolve the 2013 litigation by virtue of the 2015 addendum, involved Herman Miller acquiring, buying, purchasing Modernica's rights in the bubble lamps. Keep in mind, that is the issue here, whether MECO authorized us to buy those rights. It is clearly set forth, and the district court noted that. And in fact, this is important, in the agreement, you've seen this in the agreement, the addendum, it's conditioned on us acquiring those rights. But when Mr. Giordanella, who for all intents and purposes is MECO, he's MECO's lawyer, sent the signed addendum that Mr. Nelson had signed, he said in the email, this is only subject, this is only going to go into effect if you, Herman Miller, acquire Modernica's rights to the bubble lamps. He said it in two separate emails. And yet, Mr. Nelson argues, he never authorized us, he never authorized Herman Miller to acquire those design registrations. And ultimately, that is the issue that the district court addressed, because, again, back to where we started, the basic principle of law on which this rests is authorization. Mr. Nelson cannot authorize us to acquire rights, and then sue us for acquiring those rights. The law does not permit it. I have one minute left, and I'm going to switch to ratification. What the district court also found was that the claims are barred by ratification, because another basic principle of law, basic principle of law, and basic equity, is that you cannot benefit from conduct, accept it knowingly, willingly, and at the same time challenge it and say it was improper. And here, as we've just described, MECO Nelson, as the district court found, wanted Herman Miller to acquire those rights for Modernica. And since 2015, to a point the court earlier made, we've been paying royalties, and MECO Nelson has been accepting royalties on our sale of the bubble lamps. And we cannot sell bubble lamps. We cannot manufacture, sell them, generate income, and pay revenue to the Nelsons if we do not have the rights to do so. Mr. Nelson specifically authorized us to obtain those rights, accepted the benefits knowingly. When you say the rights, I take it their argument is that somehow these rights are only a license rights, not ownership rights. Isn't that the basic crux of the dispute here? Not really, because they say the alleged misconduct we engaged in was to own them, not just to license them, that they didn't mean for us to own them. They thought we should have, that in that settlement, the global settlement, the Modernica design registrations, which are the only things at issue right now, should have gone to GNF, and then GNF should have licensed them to us. And what was missing from the Nelsons' argument is the fact that GNF did in fact authorize it. We didn't just go get the rights for Modernica. Herman Miller asked and MECO agreed to sign a document saying, whatever rights I've got, you've got too, and GNF itself signed a document. And I should give you that record. The record site is 252-2, page ID 4337. GNF signed it and said we agree to abide by the thing Mr. Nelson signed. So everybody who could have had rights. I'm sorry, I just want to be clear. When you say what they signed was the 2015 addendum? Yes, Your Honor. Okay, not yet some separate document. No. They signed on to it. So we should read the 2015 addendum. Yes, Your Honor. And we should read the HMI Modernica agreement, and that should be it. Yes, Your Honor. Your Honors, I'll start. Someone in reverse. First of all, it's incorrect to say there's no claim that resolves ownership. We brought a cancellation claim on the design registrations, which we can only bring if we're claiming that we're the owners and they are not. We brought infringement claims, which we can only bring if we're claiming we're the owners and they are not. So it can't be true that we didn't bring a claim that resolves ownership. It's also not true that the only claim is that they were not authorized to purchase the design registration from Modernica. Look, you look at the e-mails, you have to concede that they knew there was going to be a purchase from Modernica. But what was the purpose of that? We have a competitor. The royalties depend on HMI selling. The idea was to get Modernica out of the way. It was to gain peace in this, to resolve the litigation. That was the point of purchasing, of paying Modernica off so that they would go away and no longer be a competitor. They did go away. And they did go away. But there was no agreement. You can't look at the 2015 addendum and infer that this is an agreement that either, A, they're going to, that the Nelsons are going to assign the IP, because they don't own the IP and that's plain on the face of the 2015 addendum that they're going to get the IP from someone else. Second, you can't read the addendum and conclude that they were going to get it from Modernica because it doesn't say that. All it says is we're going to get the necessary rights to manufacture and sell. It doesn't even say own. A license would give them the necessary rights to manufacture and sell, wouldn't it? And so then you look at the extrinsic evidence and you see that, well, a license is what was contemplated all along. They talk about it over and over again, about how we're going to have a license. At no point in these emails, at least between HMI and Jordanella, do they ever talk about the Bubble Lamp IP being owned by HMI, ever. You raised the cancellation. When did you bring that? That's in the complaint. I mean, but it's part of this litigation. Part of this litigation. So when you said we've claimed ownership, it's all part of the same claim. Now it's not a claim that you were out claiming ownership before you started this litigation. Well, GNF claimed ownership before the litigation. And now the estate, because of the rescission, has GNF's rights. And now the estate is claiming ownership, hence the cancellation claim. The estate's the owner, not HMI. Now, that's where there's a fundamental misunderstanding about what the roles were in 2015. MECO's role was not as a, he was not the IP holder. All he was doing was approving the royalty. And the terms of the 2006 agreement contained lots of provisions about royalties and how you handle the royalties. What's your specific response to HMI's argument that, look, MECO has been accepting royalties on the bubble lamp and gotten millions of dollars, and why should that not be a waiver or a ratification of, you know, even if you're claiming wrongdoing, you can't accept the benefits of all this now. And now they try to set it aside. But why was he not entitled to that regardless? He was. Regardless of whether those are mitigation of damages or whether they're right and it's royalties, he's entitled to it either way. Right? So how is that ratifying what they're doing? It's not. At best, it's a mitigation of the damages they're entitled to. If he's suing for something he's already receiving, I guess that's what the idea is. What really is his complaint here? The complaint is that the gift that his mother gave to GNF is trying to be, they're trying to take it. Okay? This was the Nelson's legacy, the legacy of George Nelson were these IP rights, these trade markets. What are they trying to take? Do you mean the bubble lamp IP? The bubble lamp IP. But he's getting, he's made agreements to relinquish some of his rights there in order for him to receive these royalties. He's getting the royalties. So what's he now suing about? He's suing for ownership. The whole idea was that HMI was going to manufacture and sell this, what the royalties are for, for the bubble lamps. We all understood that. It's not about that. It's about... So if you get these ownership rights, then what does that mean? You can then sell them to somebody else or to sell them to Herman Miller because then he's not going to be able to sell them? Well, I think that's a good question, Your Honor. And we're probably going to have to litigate that. I'm sure they're going to have some arguments that, well, we have this contract and you can't get out of it. But that's not really developed. You're trying to get something that you can hope to monetize in some way. Well, you know what? If I'm being honest, this isn't really about the money. For the family, this is the father's legacy. And they are extremely upset about how the underhanded manner in which it was taken without ever having any discussion about that whatsoever with them. Well, wait a minute. The family agreed for this George Nelson Foundation to be set up to perpetuate Mr. Nelson's legacy. So they made arrangements to perpetuate his legacy. That's arguably already been taken care of. So now this Mikko, how is he now arguing that he needs to do something about the legacy? And his mother, Jacqueline, participated in the setting up of this foundation with Herman Miller. And they purportedly took care of the legacy aspect. Purportedly and then didn't. The whole idea was to preserve the bubble lamp IP in GNF. She assigned it to GNF. They're saying GNF didn't have it. That they took it from GNF. Who took it? HMI. They're saying we own it now, not GNF. Well, no. Modernico allegedly pirated the bubble lamp. And then Herman Miller and Modernico made an agreement about it. And one question would be to what extent did the plaintiffs participate in that agreement or were aware of it or approved it. And now Mikko is making allegations completely contrary to these events. Actually, it's HMI that switched their position. Because their position all along was Modernico didn't have the ownership rights. And now they're saying because we've got the design rights from Modernico, we have the ownership rights. If you trace the ownership lineage, it goes to GNF and it stops. Herman Miller participated in this settlement growing out of the 2013 lawsuit. If Modernico didn't have any rights, that whole thing was to settle the entitlement to those rights, wasn't it? Correct. Not to concede that Modernico had the rights, but to get Modernico's claims out of the way. That's why. Okay. Well, thank you very much.  For able arguments on both sides. The case is submitted.